UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 23-CV-81197-ROSENBERG

IN ADMIRALTY

In the Matter of the Complaint for
Exoneration from or Limitation of
Liability by Heritage Oaks 2013 LLC,
as owner of the 1998 63-foot Sunseeker
motor vessel, bearing Hull Identification
No. XSK00433E898,

    Petitioner.
_____/

## ORDER GRANTING CLAIMANTS' MOTION TO DISMISS

**THIS CAUSE** is before the Court on Claimant Linda Moore's Motion to Dismiss at docket entry 14. Every Claimant in this case has joined in the Motion. DE 26. The Motion has been fully briefed. For the reasons set forth below, the Motion is granted.

The Petitioner filed this complaint for exoneration from or limitation of liability. DE 1. The Petitioner's basis for filing the Complaint in federal court is this Court's admiralty jurisdiction. *Id.* To establish admiralty jurisdiction, the Petitioner alleged that, while its vessel was docked, a guest was injured. *Id.* at 2.

The Claimants' Motion to Dismiss is brought under Rule 12(b)(1) of the Federal Rules of Civil Procedure. Pursuant to that Rule, the Claimants bring a factual attack on the Petitioner's basis for subject matter jurisdiction. Through such a factual attack, a court may consider evidence, and the Claimants have provided evidence in the form of an affidavit. *E.g., Lawrence v. Dunbar*, 919 F.2d 1525, 1529 (11th Cir. 1990). In that affidavit, the declarant swears that the passenger who was injured: (i) had left the Petitioner's vessel because the voyage concluded, (ii) had walked away from the vessel, (iii) was injured on a pier, and (iv) was injured because of a change in elevation on the pier. *See* DE 25-1. No evidence disputing this affidavit appears in the court file, and the Petitioner's opposition to the Motion is limited to legal argument on how this

Court should consider the affidavit.

The Claimants argue that an accident on a pier does not qualify for this Court's admiralty jurisdiction. To consider admiralty jurisdiction, this Court must utilize a two-prong test: (1) the activity from which the claim arises must satisfy a location test, i.e., the tort must have occurred on navigable water or the injury suffered on land must have been caused by a vessel on navigable water; and (2) the activity must have a sufficient connection with maritime activity. *Jerome B. Grubart, Inc. v. Great Lakes Dredge & Dock Co.*, 513 U.S. 527, 534 (1995). The Claimants have provided undisputed authority for the proposition that a pier is land, not water, and thus the parties' dispute focuses on whether "the injury suffered on land [was] caused by a vessel on navigable water." *E.g., Hastings v. Mann*, 340 F.2d 910, 911 (4th Cir. 1965).

As a threshold matter, the Court notes that the Claimants' argument is facially persuasive. As a matter of common sense, the uncontested affidavit stands for the proposition that the injured (former) passenger was allegedly harmed by a change in elevation on land, not water, and that the injury did not occur because of a "vessel on navigable water." To refute this proposition, the Petitioner argues: "The U.S. Court of Appeals for the Eleventh Circuit has established a willingness to extend admiralty jurisdiction to areas outside those that are intimately connected with the ship." DE 22 at 4. For support, the Petitioner relies solely upon *Doe v. Celebrity Cruises, Inc.*, 394 F.3d 891 (11th Cir. 2004), a case with which this Court is familiar.

*Doe* involved an extreme set of facts. In *Doe*, a cruise ship passenger asked a crewmember of a vessel (assigned to wait on her table) for a suggestion for a place to visit on an island. *Id.* at 897. The crewmember offered to visit a particular place *with* the passenger, and the passenger agreed. *Id.* After their on-land visit concluded, the crewmember offered to escort the passenger back to the ship, and the passenger again agreed. *Id.* at 898. At trial, the passenger

2

testified that the reason she agreed was because she trusted the crewmember due to his status as an employee on the vessel that had been assigned to wait on her table. *Id.* On the walk back to the vessel, the crewmember sexually assaulted the passenger. *Id.* On appeal, the Eleventh Circuit independently considered the question of whether the district court had admiralty jurisdiction over the passenger's tort claim for sexual assault. *Id.* at 901.

The Eleventh Circuit concluded that *Doe* represented "the outer boundaries of admiralty jurisdiction." *Id.* But the Eleventh Circuit concluded that there was admiralty jurisdiction under the "peculiar circumstances" of the case for the following reasons:

> First, the stop in Bermuda was a scheduled port-of-call, and was an integral part of the on-going cruise or maritime activity in this case. Ports-of-call not only add to the enjoyment of a cruise but form an essential function of the cruise experience. In fact, on this particular cruise, five of the seven nights were to be spent in Bermudian ports. Plainly, individuals choose cruise ship vacations because they want to visit unfamiliar places ashore. Cruises to Alaska, the New England States, Bermuda or the Caribbean offer fundamentally different experiences, not generally because of any material difference between ships, but often because of where the ships elect to *stop.* When a passenger selects a particular cruise, ports-of-call or stopovers provide those passengers with the "cruise experience" for which they are paying. Simply put, the destinations or ports-of-call are frequently the main attraction.
>
> Just as ports-of-call serve as an integral part of the maritime cruise, nothing about the particular facts of this case takes the crew member sexual battery outside the scope of this Court's admiralty jurisdiction. The sexual battery occurred very close to the docked ship, and neither the victim passenger nor the crew member left the port-of-call or traveled any real distance from the ship. As demonstrated by the facts of this case, when docked at the port-of-call, the cruise ship allowed passengers to come and go from the ship as they elected; consequently, there was little practical difference between the port-of-call and other parts of the ship— they were, at all times, equally accessible to passengers. Indeed, the ship literally cast a long shadow; it was close by and visible from the Oasis. It is thus not surprising that passengers and crew members routinely went back and forth between the Oasis and the ship, and routinely socialized together at the Oasis.
>
> Moreover, in many ways this particular incident **effectively began and ended aboard the cruise ship**. The necessary precursors for this sexual battery occurred while the ship was on navigable waters; that is, it would not have occurred if the ship had not assigned Aydin to be Doe's waiter or if Aydin had not directed Doe's

3

> group to attend this particular bar within eyeshot of the ship on that fateful night. **And the incident did not end until Aydin and Doe returned to the ship and parted ways**.

*Id.* at 901-02 (emphasis added). Succinctly stated, the injury in *Doe* began on a vessel, and it ended on a vessel. Not so here. The injured (former) passenger had completed her voyage, and the change in elevation on the pier had nothing to do with prior activities on the vessel.

The Petitioner also cites to *Duluth Superior Excursions, Inc. v. Makela*, but that case does help the Petitioner. 623 F.2d 1251, 1252 (8th Cir. 1980). In *Duluth*, the vessel had been a "booze cruise." *Id.* A passenger was injured by another, heavily intoxicated passenger shortly after leaving the vessel, and the injured passenger alleged that the vessel had inadequately supervised the drinking passengers and had permitted the drinking passengers to become illegally intoxicated. *Id.* Because the injured passenger tied her injury to actions on the vessel, the appellate court stated that: "there is little question that the wrongs allegedly committed by [the vessel] took place on navigable waters." *Id.* at 1252. Here, the Petitioner has not tied the alleged injury to any activity on the vessel.

Finally, the Petitioner cites to a line of cases decided in Florida state courts, not Florida federal courts, which stand for the proposition that admiralty jurisdiction is satisfied when an injury occurs in an area near a vessel that the vessel exclusively controls, such as a restricted-access cruise ship terminal. *See Carnival Corp. v. Garcia*, 237 So. 3d 1110, 1117 (Fla. Dist. Ct. App. 2018) (drawing a distinction between injuries "inside a terminal" and injuries outside a terminal "that are accessible to both ticketed passengers and non-ticketed individuals alike"). But the Claimant has provided no evidence, and has made no argument, that the pier in this case was somehow under the exclusive control of the vessel, and federal courts dismiss cases for lack of admiralty jurisdiction when the injury has occurred in unattached public areas of

4

egress/ingress. *Vincenzo v. Carnival Corp.*, No. 09-CV-20234, 2012 WL 1428888 (S.D. Fla. Apr. 24, 2012) (dismissing case premised on elevated step outside of cruise ship terminal); *Fernandez v. Ceres Marine Terminals, Inc.*, No. 12-CV-2539, 2013 WL 1663333 (M.D. Fla. Apr. 17, 2013) (dismissing case premised on fall outside of cruise ship terminal).

In summary, the Petitioner has provided no evidence and has made no persuasive legal argument that the alleged injury in this case was caused by activities on a vessel over water. Instead, the undisputed evidence before the Court is that the injury in this case took place on land, and that all prior activities in connection with the vessel (and with water) had concluded. Relatedly, the Petitioner has provided no evidence and made no legal argument for the proposition that the land the alleged injury took place on was under the exclusive control of the vessel. Instead, based upon the appearance of Claimant Safe Harbor New Port Cove Marina and Claimant Sun Communities, Inc., it appears that the pier was not under the exclusive control of the vessel. This case is therefore indistinguishable from the federal cases cited above (*Vincenzo* and *Fernandez*) that found there was no admiralty jurisdiction for injuries occurring on land, with an attenuated connection to embarkation/disembarkation, where the land was not under the exclusive control of the vessel.

For all of the foregoing reasons, it is **ORDERED AND AJUDGED** that the Claimants' Motion to Dismiss [DE 14] is **GRANTED**. The Petitioner's Petition is **DISMISSED** and the Clerk of the Court shall **CLOSE THIS CASE** and **DENY** all pending motions **AS MOOT**.

**DONE and ORDERED** in Chambers, West Palm Beach, Florida, this 9th day of February, 2024.

_____
ROBIN L. ROSENBERG
UNITED STATES DISTRICT JUDGE

Copies furnished to Counsel of Record